UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURRELL CLARK,

    *Plaintiff*,

v.

MS. BROWN, MS. MAUL,
MS. PATTON, and
Mr. FERNETTE,

    *Defendants*.[1]

CASE NO. 20-cv-12894

DISTRICT JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PATRICIA T. MORRIS

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS BROWN, MAUL, PATTON AND FERNETTE'S
MOTION TO DISMISS (ECF No. 20)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **GRANTED**. (ECF No. 20.)

**II.    REPORT**

    **A.    Background**

Plaintiff filed the instant *pro se* complaint on October 22, 2020. (ECF No. 1.) On November 12, 2020, an Opinion and Order was entered dismissing Defendant Chapman, and dismissing "Plaintiff's claim of retaliation for refusal to work in the assigned area without personal protective equipment and any claims related to mental health services."

---

[1] Defendant Willie Chapman was terminated from the case on November 12, 2020.

1

(ECF No. 6, PageID.112.) Therefore, the remaining claims are for "deliberate indifference to Plaintiff's right to a safe workplace and [] retaliation for his use of the grievance process" resulting in his removal from his job as a Prison Observation Aide (POA) against Defendants Brown, Maul, Patton, and Fernette. (ECF No. 6, PageID.108; ECF No. 20, PageID.154.)

On May 10. 2020, Defendant Brown told Plaintiff to report to his job of being a Prisoner Observation Aide (POA) in the segregation area. POAs are "used to observe other prisoners in a mental health setting who are ordered by a psychiatrist to remain under one-on-one direct observation." MDOC Policy Directive 04.06.115, ¶ V. "Prisoners may be removed from this assignment at the discretion of the POA committee. Since this is a voluntary assignment, a prisoner assigned to the program also may request removal for any reason, the request shall not be considered a refusal and shall not result in a negative work evaluation." MDOC Policy Directive 04/06/115, ¶ X.

Plaintiff avers that on May 10, 2020, he "refused" to work as a POA because he was not given "any Personal Protection Equipment [PPE.]" (ECF No. 1, PageID.7.) Plaintiff was "sent back to the unit and not allowed to work in the other designated working area Housing Unit #7." (*Id*.)

On May 14, 2020, Plaintiff alleges that he reported to Defendant Maul who told Plaintiff "if I continue to refuse the segregation area that it will be logged in the books." (ECF No. 1, PageID.7.) Plaintiff "let [Maul] know that I was not volunteering to work in an area that has covid-19 affected people in it, as I engaged in my First Amendment right protected conduct. I was sent back to the unit and was **not** allowed to work" any alternative

2

assignment. (*Id*.) (emphasis in original). Plaintiff also believed that the segregation area was "poorly ventilated" and that "officers assigned to that area contracted the virus[.]" (*Id*.) Plaintiff wrote a kite to Defendant Patton on that same day, May 14, which read, in its entirety:

> CPC Ms. Patton why am I being told to report to (seg.) area for my P.O.A. assignment daily when I have never agreed to volunteer to work over there, once it was made an covid-19 holding area, Its seems as if I'm pressured with 'don't lose your job for refusing.' Will my assignment be terminated because I refuse to work in an contagious area? Some of the officers are insinuating that by sending signs of signification. I just want to be clear on this and protect myself and my rights during this pandemic.

(ECF No. 1, PageID.26.)

On May 16, 2020, Defendant Fernette completed an evaluation form recommending that Plaintiff "should be terminated from his position, Clark has refused POA detail 4 times and will only report to assignment if he is assigned to housing unit 7. Clark has not been asked to perform his POA detail on prisoners with covid or in close proximity to prisoners with covid." (ECF No. 1, PageID.23.)

On May 18, 2020, Plaintiff alleges that Defendant Maul called the housing unit and told another officer that Plaintiff was "laid in" from his POA assignment and that a form would be sent notifying him of his termination. (ECF No. 1, PageID.7.) In addition, on May 18, 2020, Plaintiff sent another kite to Defendant Patton:

> Ms. Patton I reported to control center and was 1st to arrive. On 5-17-20 at 1720, the officer, a Mr. ----- Brown at the station asked me to report to (seg) I refused. When I'm called in the unit, I always let the officers know that I'm not willing to volunteer to work the (seg) area. The (seg) area has cross contamination of officer's who go on both sides, they also serve tray's of food to P.O.A.'s, that virus lives on animate and inanimate surfaces for days. I am not willing to take that risk. On 5-15-20 you came to the unit, I asked did you get my kite from the 14th of May, you said no.

3

> Before I signed your (PPE) training sheet we went over I asked you a question do I have to work in an area enclosed and exposed with covid-19 that's poorly ventilated" you responded 'no, you do not have to work in an area that you feel unsafe in.' You told me that no one in control center was complaining. Today I'm being laid in. Why am I being punished for having complicated or unpopular needs during this pandemic.

(ECF No. 1, PageID.27.) On July 3, 2020, Plaintiff added that "[t]he very next day after the 17th C/O Mr. Maul laid me in. Which was the same day I wrote this kite before that happened." (*Id*.)

On May 18, 2020, Defendant Patton responded to Plaintiff's first kite: "Please be advised as of 4-13-2020, the north side of segregation is no longer consider[ed a] covid-19 area. Prisoners on the north side of seg are not covid-19 positive, under investigation or close contacts." (ECF No. 1, PageID.28.) On May 26, 2020, Defendant Patton wrote to Plaintiff: "When we spoke, I was unaware that you were refusing to work all of seg assignments, not just the south side of seg – your 363 [form] for termination is with ADW [Associate Deputy Warden] and you will be notified if you are terminated or not." (ECF No. 1, PageID.29.)

Plaintiff avers that he was informed of his termination on July 2, 2020, when he received a copy of the form completed by Defendant Fernette on May 16, 2020. (ECF No. 1, PageID.8.)

### B. Motion to Dismiss Standards

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the

light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose

to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which she complains was committed by a person acting under color of state law and (2) the conduct deprived her of a federal constitutional or statutory right. In addition, a plaintiff must allege that she suffered a specific injury as a result of the conduct of a particular defendant and she must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

6

### C. Eighth Amendment Deliberate Indifference

#### 1. Standard

In *Estelle v. Gamble*, the Supreme Court held "that deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause because it constitutes the "unnecessary and wanton infliction of pain" and is "repugnant to the conscience of mankind" by offending our "evolving standards of decency." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 97, 104 (1976)). To establish a cognizable claim, Plaintiff's allegations must show Defendant's "sufficiently harmful" acts or omissions. *Id.* at 106. "[I]nadvertent failure to provide adequate medical care . . . will not violate the Constitution." *Id.*

The "deliberate indifference" inquiry has objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry asks whether the deprivation was "sufficiently serious," which a claimant satisfies when his or her condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted). The former standard focuses on the "effect of delay in treatment." *Anthony v. Swanson*, 701 F. App'x 460, 463 (6th 2017). In *Napier v. Madison Co.*, 238 F.3d 739 (6th Cir. 2001), the court held that a plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Id.* (citation omitted). This rule applies more broadly to claims

7

"based on the prison's failure to treat a condition adequately." *Blackmore v. Kalamazoo Co.*, 390 F.3d 890 (6th Cir. 2004). The Sixth Circuit recently explained that

> when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). The plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment. There must be "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). This will often require "expert medical testimony ... showing the medical necessity for" the desired treatment and "the inadequacy of the treatments" the inmate received. *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017); *see Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (explaining that adequacy-of-care claims may require expert testimony "to create a genuine dispute that the prisoner's medical needs are serious"). The plaintiff also must "place verifying medical evidence in the record to establish the detrimental effect" of the inadequate treatment.

*Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

The subjective inquiry, by contrast, considers whether official's state of mind was sufficiently culpable; it requires a showing that an official "'knows of and disregards an excessive risk to inmate health or safety[.]'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quotation omitted). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* Inferences from circumstantial evidence can suffice to satisfy the subjective showing. *Magnum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017).

The Supreme Court examined the subjective prong in *Farmer v. Brennan*, 511 U.S. 825, 834-847 (1994). The subjective nature of deliberate indifference follows from the

8

Eighth Amendment's principle proscription of "only the unnecessary and wanton infliction of pain," and focus on the defendant's culpability. *Id.* at 834 (citation omitted). The culpable state of mind, the Court said, was not ordinary negligence—cruel and unusual punishment is something more than run of the mill medical malpractice. *Id.* at 835; *see also Estelle*, 429 U.S. at 110. But not so much more that the defendant must intentionally or purposefully inflict injury. *Farmer*, 511 U.S. at 837. Instead, as noted above, the standard turns on whether the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The upshot, for present purposes, is that defendants who "responded reasonably to the risk," even if the potential harm subsequently eventuates, have not violated the Eighth Amendment. *Id.* at 844-845.

2. **Arguments and analysis**

Defendants argue that the complaint fails to state a claim for deliberate indifference because the defendants responded reasonably to the COVID-19 pandemic, citing *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). (ECF No. 20, PageID.170-175; ECF No. 27, PageID.322-323.) Plaintiff counters that "prison inmates are protected from punishment for refusing to perform unconstitutional assignment, as they are protected from having to perform the assignment. For prison officials knowingly to compel convicts to perform physical labor which constitutes a danger to their health, or which is unduly painful constitutes an infliction of cruel and unusual punishment[.]" (ECF No. 26, PageID.282.)

9

Defendants acknowledge that they were aware of the health risk posed by the virus. In *Wilson*, the Sixth Circuit held that "[t]he key inquiry is whether the [prison] responded *reasonably* to th[is] risk." *Wilson*, 961 F.3d at 840 (*citing Farmer,* 511 U.S. at 844 (emphasis added)). There, the plaintiffs, inmates at Elkton prison, "on behalf of themselves and current and future inmates at Elkton, allege[d] that their confinement in the midst of the COVID-19 outbreak violates the Eighth Amendment." *Wilson*, 961 F.3d at 835. Here, unlike the Plaintiffs in *Wilson*, Plaintiff does not argue that MDOC policies in general regarding COVID-19 responses were inadequate. *Cf.*, *Wilson*, 961 F.3d at 841. Instead, Plaintiff complains about his particular treatment regarding his POA assignment. I suggest that Defendants responded reasonably to the risk caused by COVID-19 when they decided how to manage Plaintiff's POA assignment.

By Plaintiff's own allegations, Plaintiff refused to work in the segregation unit, not just any portion of segregation, but all of segregation. (ECF No. 1, PageID.7.) Although Plaintiff avers that he refused to work without personal protection equipment (PPE), his kites to Defendants make no mention of any request for PPE or any other accommodation so that he could work in any area of segregation, he simply refused to work there and indicated he would only work in housing unit 7. (ECF No. 1, PageID.7, 23, 26.) Plaintiff may be correct that "knowingly to compel convicts to perform physical labor which constitutes a danger to their health, or which is unduly painful constitutes an infliction of cruel and unusual punishment" (ECF No. 26, PageID.282). However, Plaintiff was never compelled to work anywhere at any time. At best, Plaintiff complains that he was placed in a difficult situation where he had to choose between working where he was

10

uncomfortable or potentially losing his POA assignment, but nowhere does he indicate he was ever forced to work, let alone forced to work in an area where he could be exposed to the COVID-19 virus. There is no allegation that Defendants responded unreasonably to any request from Plaintiff (for PPE or anything else) nor is there any allegation that Defendants were deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Plaintiff's complaint fails to state a claim under the Eighth Amendment.

### D.      Retaliation under the First Amendment

#### 1.      Standards

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action [was] motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Logically, "the defendant must have known about the protected activity in order for it to have motivated the adverse action." *Id*. at 387, n. 3. The Sixth Circuit has held that proper usage of an inmate grievance procedure is protected conduct. *E.g. Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("Filing grievances through the inmate grievance mechanism is protected conduct.").

#### 2.      Arguments and Analysis

Defendants argue that because Plaintiff was "constructively removed from his position before filing any grievances" his retaliation claim must fail. (ECF No. 20, PageID.175.) Defendants assert that "[w]hile this Court found in its earlier screening order

that Plaintiff's retaliation claim survives screening, a closer look at the complaint reveals…that the alleged adverse action – removal from Plaintiff's POA assignment – occurred before Plaintiff began to engage in protected conduct by utilizing the grievance process" assuming that "being 'laid in' from his position as a POA on May 18, 2020 was an adverse action." (ECF No. 20, PageID.176.)

Plaintiff counters that "Defendants do not disute Plaintiff engaged in protected conduct" (ECF No. 26, PageID.285) (emphasis in original), and that "there is a temporal proximity between Plaintiff's decision to engage in protected conduct, and all Defendants involved retaliation as he continued to engage in protected conduct." (ECF No. 26, PageID.286.)

Defendants reply that Plaintiff "wrote and/or dated his grievance on May 14, but he did not actually provide the grievance form to any MDOC official until May 20." (ECF No. 27, PageID.324.) Thus, "[p]rior to May 20, 2020, no prison official could have known that Plaintiff had engaged in protected conduct because the MDOC had not yet received a grievance, and no prison official could have retaliated against Plaintiff for the same." (ECF No. 27, PageID.324-325.)

I suggest that Defendants are correct. As noted in *Thaddeus-X*, "the defendant must have known about the protected activity in order for it to have motivated the adverse action." 175 F.3d at 387, n. 3. Here, although Plaintiff wrote and dated his grievance form on May 14, since it was not filed until May 20, 2020, Defendant Fernette's completion of the form (363) terminating Plaintiff from his POA work could not have been motivated by an awareness of the grievance. (ECF No. 1, PageID.23.) Nor could Defendant Maul's

12

telephone call of May 18, 2020 informing Plaintiff's housing unit that he was "laid in" from his POA assignment have been motivated by Plaintiff's filing of a grievance that did not occur until May 20, 2020. (ECF No. 1, PageID.7.) Although Plaintiff was not formally notified of his termination until July 2, 2020, when he received a copy of the form completed by Defendant Fernette that had been completed on May 16, 2020 (ECF No. 1, PageID.8), the adverse actions taken against him occurred before he filed any grievance. Since the adverse actions taken on May 18, 2020 preceded Plaintiff's protected activity in filing a grievance on May 20, 2020, Plaintiff's claim must fail. *Kitchen v. Winn*, 2020 WL5793259, at *1 (E.D. Mich. Sept. 29, 2020) ("Plaintiff did not file grievances against these Defendants prior to the alleged retaliatory actions, and there is no evidence that these Defendants were aware of Plaintiff's grievances" thus, plaintiff's retaliation claim should eb dismissed); *Fitts v. Snyder*, 2016 WL 633957, at *2 (E.D. Mich. Feb. 11, 2016) (plaintiff's "retaliation claim fails because he did not file a grievance against [defendant]…at any time before she [committed the adverse action]"); *Smith v. Heyns*, 2013 WL 4499034, at *4 (W.D. Mich. Aug. 20, 2013) (where plaintiff failed to allege he engaged in protected conduct prior to any deprivation, retaliation claim would be dismissed).

    **E.**    **Conclusion**

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss (ECF No. 20) be **GRANTED**.

**III.**    <u>**REVIEW**</u>

13

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Date:  April 16, 2021

S/ PATRICIA T. MORRIS  
Patricia T. Morris  
United States Magistrate Judge